## KENNEDY v. CONNECTICUT INDEMNITY CO.
### No. 3545.

Circuit Court of Appeals, Tenth Circuit.
April 26, 1948.

Robert J. Woolsey, of Tulsa, Okl., and Forrester Brewster, of Muskogee, Okl. (Roy White and H. B. Parris, both of Eufaula, Okl., on the brief), for appellant.

C. J. Watts, of Oklahoma City, Okl. (Looney, Watts, Ross, Looney & Smith, of Oklahoma City, Okl., and E. W. Smith, of Henryetta, Okl., on the brief), for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This is a garnishment proceeding in which appellant, Kennedy, seeks to enforce a judgment against Mae L. Cox by execution upon appellee Insurance Company.

Kennedy recovered a judgment in the District Court of Muskogee County, Oklahoma, against Mae L. Cox and Keystone Freight Lines for $8,000 due to personal injuries sustained in a collision of the car driven by Mae L. Cox, in which he was riding under a share the ride plan, with a truck of the Keystone Freight Lines. Execution was issued against Cox and was returned "no property found." Thereupon Kennedy instituted a garnishment proceeding against the Insurance Company in the Oklahoma District Court, which proceeding was removed to the United States District Court for the Eastern District of Oklahoma.

The facts are not in dispute. Mrs. Cox drove her car back and forth between Eufaula, Oklahoma, her home, and her place of employment, the Government Ordnance Plant at McAlester, Oklahoma. She carried from one to four passengers and was issued gasoline coupons to enable her to drive from Eufaula, to McAlester. The passengers were charged $5 per week. In 1945 she contacted Mr. Stone, agent for the Insurance Company, regarding insurance on her car which she had been desirous of purchasing for some time but thought the premiums were too high. Mr. Stone explained that the appellee Insurance Company would insure her against liability for a reasonable premium but that such insurance would not cover any occupant of her own car. The policy was so written; it is on this policy that Kennedy seeks to recover against the Insurance Company.

The policy as written contained the following endorsement: "It is agreed that such insurance as is afforded by this policy for bodily injury liability does not apply to injury including death at any time resulting therefrom, sustained by any person while in or upon: entering or alighting from the automobile." There was also an applicable exclusion clause. "This policy does not apply: (a) Under any of the coverages, while the automobile is used as a public or livery conveyance, unless such use is specifically declared and described in this policy and premiums charged therefor."

To meet these clauses limiting liability, Kennedy introduced correspondence between Leon Henderson, Administrator, Office of Price Administration, and the Manager of the Insurance Company, which he alleges established a waiver by the Insurance Company of such restrictive clauses. Leon Henderson wrote to the Automobile Liability Insurance Carriers in August of 1942: " * * * In order to further the war effort and conserve vital war materials, participation by the public in ride sharing plans has been encouraged by several governmental agencies including the Office of Price Administration. Under such plans, owners and operators of automobiles may carry others (1) gratuitously, (2) under agreement to share expenses by actual contributions by riders to the cost of rides, (3) under agreement by which automobiles of riders are to be used in turn, or (4) under other agreements for distribution of expense.

"Since participating by car owners is in the interests of the war effort, the Office of Price Administration believes participating car owners should lose no part of the coverage afforded them by their automobile liability insurance (bodily injury and property damage).

"The Office of Price Administration, therefore, requests the cooperation of all insurance companies writing automobile liability insurance in assuring the holders of such policies participating in car sharing plans of complete protection.

"In view of the present importance of the situation, an early reply will be appreciated."

The manager of appellee Insurance Company replied: " * * * We have received your letter of August 24, 1942, in which our cooperation is requested to the end that the protection afforded our policyholders by our automobile liability insurance policies will not be adversely affected by their bona fide participation in any ride sharing plans sponsored by any Federal or State

742

agency including the plans referred to in your letter.

"We realize that there are certain provisions in automobile liability insurance policies, such as those precluding coverage where the vehicle is used in carrying persons for a charge, or as a public and livery conveyance, or operated in violation of law, which might be construed as violated by participation in a ride sharing plan, and therefore, effective to deprive our policyholders of insurance coverage. It is our objective to remove the limitations upon coverage resulting from such policy provisions when an automobile insured by us is used in a ride sharing plan. We, therefore, hereby agree that we will construe all automobile liability insurance written by us (both bodily injury and property damage) so that the protection given by such policies to our policyholders will not be impaired by their bona fide participation in a ride sharing plan. This construction will be made irrespective of the declared or rated use of insured automobiles and irrespective of the application of legal principles, statutes and ordinances affecting registration, license, or liability.

"The foregoing will apply to all accidents occuring on or after July 15, 1942."

The trial court found that the Insurance Company did not by its letter agree to insure passengers; that the protection of Mrs. Cox's policy was in no way impaired by reason of any ride sharing plan; and accordingly entered judgment for the Insurance Company. Kennedy then appealed to this court.

Assuming that the letter of the Insurance Company bound it in its relations with its policyholders, the only effect such letter could have would be to make the policies incontestable in so far as any clauses limiting liability conflicted with ride sharing plans. That this was the intended effect of the correspondence is apparent from the letters themselves. Thus, the Office of Price Administration wrote, " * * * Participating car owners should lose no part of the coverage afforded them * * *." The Insurance Company answered, " * * * the protection given by such policies to our policyholders will

not be impaired by their bona fide participation in a ride sharing plan."

The Insurance Company does not seek to escape any liability assumed in the policy by any activity of the insured in relation to ride sharing plans. It merely points out that under the policy it agreed to indemnify the insured against liability for personal injuries caused by her automobile only to persons who were not passengers in her automobile. Insured had this coverage prior to participating in any ride sharing plan; she had exactly the same coverage while she was participating in a ride sharing plan. The policy of the insured just did not cover passengers in her own automobile. It did not become invalid nor did the insurer claim any defense by virtue of any participation of insured in a ride sharing plan. Thus the insurer does not seek release from liability because she was carrying passengers for hire. Her insurance covered one injured through her driving if such injured one was not a passenger in her automobile. This coverage she retained though she took part in a ride sharing plan.

Affirmed.